***********
The undersigned have reviewed the prior opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the Plaintiff-Employee and Defendant-Employer between 1953 and 1973.
3. ITT Hartford was the workers' compensation carrier for said employer.
4. Plaintiff suffers from the occupational disease of asbestosis and last injurious exposure occurred while Plaintiff was in the employ of Defendant-Employer.
5. Plaintiff was diagnosed with asbestosis on January 4, 1993.
6. Plaintiff-Employee's average weekly wage is $442.00 pursuant to the September 3, 1996, Opinion and Award of the Industrial Commission.
7. The issue for hearing before the Full Commission is pursuant to N.C. Gen. Stat. § 97-61.6: After the third advisory medical report, what compensation, if any, the employee is entitled to receive in addition to the 104 weeks already received?
8. The depositions of Dr. Douglas G. Kelling, Jr. and Dr. Robert A. Rostand are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On July 19, 1995, this matter was originally heard in Concord, North Carolina, before Deputy Commissioner Morgan S. Chapman.
2. On September 3, 1996, an Opinion and Award noted that the parties stipulated that plaintiff had contracted the occupational disease of asbestosis and that he was last injuriously exposed to the hazards of asbestos while employed by defendant.
3. Deputy Commissioner Chapman ordered defendant to pay compensation to Mr. Anderson at the rate of $442.00 per week for 104 weeks for his asbestosis.
4. On May 2, 1997, Mr. Anderson had his second advisory panel examination.
5. On April 10, 2001, Mr. Anderson underwent his third advisory panel examination.
6. Plaintiff was employed by defendant from 1953 until 1973 as an insulator.
7. Plaintiff started working at a service station in 1973. When the service station owner suffered a stroke, plaintiff took over operations of the service station.
8. Plaintiff previously performed all of the general service station work; however, over the last two years, he began staying in the office and could do nothing more than talk to customers and handle billing. Eventually, even plaintiff's highly reduced work activities became too fatiguing for him. Plaintiff often became short of breath just talking and had to leave work to go home and rest.
9. Dust and the fumes at the service station made it hard for plaintiff to breathe while on its premises.
10. In July 2000, plaintiff had to sell the service station because he could no longer handle the work at all. Plaintiff did not leave the station because he wanted to retire; instead, plaintiff sold the station as he was unable to continue working due to severe breathing difficulties.
11. Heat, humidity, and cold temperatures impair plaintiff's ability to perform physical activities.
12. Plaintiff's mailbox is approximately seventy-five (75) feet from his house; therefore, retrieving his mail makes plaintiff so short of breath that he has to rest after completing this task.
13. The only yard work plaintiff can now perform is riding his lawnmower for a short while. This also makes plaintiff short of breath and he has to rest after a short period of time on the riding lawn mower.
14. Plaintiff lives in a two-story house, but he stays downstairs because he cannot go up the stairs without getting short of breath.
15. Plaintiff will sometimes take his wife shopping, but he does not have the breath to shop with her, but rather has to wait in the car for her.
16. Plaintiff owns a house at the beach. Plaintiff gets very short of breath walking up the stairs at the beach house; as a result, his wife has to carry all the luggage and supplies up the stairs. Plaintiff used to surf fish but can no longer do so due to his inability to breathe. Plaintiff is also unable to go for walks on the beach.
17. Plaintiff has a granddaughter who is very active in sports, and he used to frequently play with her. However, over the last five years plaintiff has not been able to play any sports with her due to his extreme breathing difficulties.
18. Dr. Douglas Kelling first saw plaintiff on September 1, 1992. At that time, Dr. Kelling diagnosed plaintiff with asbestosis.
19. Over the years, plaintiff was seen by Dr. Kelling on numerous occasions.
20. Dr. Kelling testified that plaintiff has severe breathing problems and that his asbestosis contributed to his decline in breathing ability.
21. Dr. Kelling opined that plaintiff is disabled as far as his ability to hold employment. Dr. Kelling further believed that asbestosis was a significant contributing factor to his inability to hold employment.
22. Plaintiff was seen by Dr. Robert A. Rostand on three different occasions for the purpose of performing an advisory medical panel examination. Dr. Rostand first saw Plaintiff in August 1993. At that time, Dr. Rostand diagnosed plaintiff with asbestosis. Dr. Rostand also noted that plaintiff had a restrictive ventilatory defect and that his breathing was below normal. In his report Dr. Rostand noted, "Mr. Anderson is partially disabled on the basis of his pulmonary asbestosis. Plaintiff is currently gainfully employed." Dr. Rostand further found that "Mr. Anderson has a Class III, or 30% respiratory impairment by AMA criteria. It is felt that this pulmonary impairment is due entirely to his occupational exposure to asbestos."
24. Dr. Rostand saw plaintiff again on May 2, 1997. Dr. Rostand's report indicated, "Mr. Anderson's dyspnea has gotten progressively more severe such that he is unable to perform such activities as climbing stairs, raking and pushing a lawn mower without having to stop." Dr. Rostand also noted on that date, "Mr. Anderson was partially disabled on the basis of his pulmonary asbestosis. He is currently employed." Dr. Rostand further noted, "Mr. Anderson has a Class III (or 30 to 45% respiratory impairment by AMA criteria). It is this examiner's opinion that his pulmonary impairment is due entirely to his occupational exposure to asbestos and his asbestos related disease of lung and pleura."
25. Dr. Rostand last saw Plaintiff on April 10, 2001. Dr. Rostand noted that plaintiff's breathing had significantly declined between 1993 and 2001. Dr. Rostand believed that asbestosis was the sole cause of plaintiff's breathing impairment. As a result of his examination of plaintiff, Dr. Rostand opined, "Mr. Anderson is totally and permanently disabled on the basis of his asbestos related disease of lung and pleura." Dr. Rostand felt that "Mr. Anderson has a Class IV (50-100%) respiratory impairment by AMA criteria. It is this examiner's opinion that all of this respiratory impairment is based entirely on his asbestos related disease of the lung and pleura."
26. At the time of the deputy commissioner hearing in this matter, plaintiff was seventy-one years old. Plaintiff has only a high school education and work experience limited to twenty years as an insulator and twenty-seven years as a service station operator. Plaintiff has not worked in any capacity since July 2000.
27. Although plaintiff was diagnosed with asbestosis by Dr. Kelling on September 1, 1992, he did not have a diminished capacity to earn wages until July 2000, when he could no longer maintain employment.
28. There is no evidence that competitive work is available for someone of plaintiff's age, education, background, and work experience having his physical limitations. Furthermore, there is no evidence that plaintiff can obtain employment in an open and competitive labor market.
29. There is no evidence that suitable jobs are available for plaintiff, that plaintiff is capable of getting said jobs taking into account his physical and vocational limitations, or that any job would enable plaintiff to earn some wages.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On September 3, 1996, plaintiff was awarded compensation pursuant to an Opinion and Award stipulating that he had contracted asbestosis arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-62.
2. After the completion of plaintiff's third panel examination, the Industrial Commission is required to hold a further hearing to determine what amount of additional compensation, if any, plaintiff is entitled to receive. N.C.G.S. § 97-61.6.
3. As a result of plaintiff's asbestosis, plaintiff is incapable of earning wages taking into account plaintiff's physical condition, age, education, work experience, and training. N.C.G.S. § 97-54.
4. Plaintiff is entitled to receive disability compensation for all periods of time he is unable to work due to his compensable occupational disease, asbestosis. N.C.G.S. § 97-29.
5. Plaintiff is entitled to receive medical treatment for his occupational disease, asbestosis, so long as such treatment should effect a cure, provide relief, or lessen plaintiff's period of disability. Plaintiff will benefit from further monitoring of his asbestosis. N.C.G.S. §§ 97-25; 97-59.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorney's fees hereinafter allowed, defendants shall pay to plaintiff disability compensation at the rate of $442.00 per week beginning July 2000 and continuing during the lifetime of Plaintiff, or further order of the Industrial Commission. Such amount of benefits as have accrued shall be paid in a lump sum.
2. A reasonable attorney's fee in the amount of twenty-five percent (25%) of compensation awarded plaintiff in Paragraph 1 is approved for plaintiff's counsel. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to plaintiff's counsel. From such amounts having not yet accrued, defendants shall pay directly to plaintiff's counsel every fourth check.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief, and/or lessen plaintiff's period of disability.
4. Defendants shall pay the costs due the Commission.
This the ___ day of May 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER